## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESSICA BARNABAS,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  07-02207  (JDB) |
| **THE BOARD OF TRUSTEES OF THE UNIVERSITY OF THE DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff Essica Barnabas alleges that her former employer, the University of the District of Columbia ("the University" or "UDC"), discriminated against her on the basis of her age and retaliated against her after she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Currently before the Court is UDC's motion for summary judgment.  For the reasons set forth below, the Court will grant in part and deny in part UDC's motion.

## BACKGROUND

Essica Barnabas was born October 10, 1935.  Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Docket Entry 34], Exhibit 2 (Deposition of Essica Barnabas ("Barnabas Depo.")), 7:20-22.  She received her Ph.D in biology from Howard University in 1972.  See id., Exhibit 7 (Barnabas Curriculum Vitae) 3.  From 1974 until 2006, Barnabas taught in UDC's Department of Biological and Environmental Sciences.  See Second Am. Compl. ¶ 3.  In 1997, Barnabas was working as an Associate Professor when she lost her job as the result of a university-wide workforce

reduction.  <u>See</u> Barnabas Depo. at 25:21-26:7.  The University immediately rehired Barnabas, but only as an adjunct professor teaching on a semester-to-semester basis.  <u>See id.</u> 35:13-36:6.

Barnabas was eager to return to her previous position as a full-time professor. Accordingly, between 2000 and 2003, Barnabas wrote numerous letters to Dr. Freddie Dixon, the chair of UDC's Biological and Environmental Sciences Department, as well as to other UDC administrators.  In these letters, Barnabas asked that she be promoted to a full-time professor, and requested that she be appointed to specific teaching vacancies that were then, or soon to be, available.  <u>See</u> Pl.'s Opp'n to Def.'s Mot. [Docket Entry 37], Exhibit 2 (letters from Barnabas to various UDC officials).  She was unsuccessful.

In 2004, a professor vacancy opened in UDC's Biological and Environmental Sciences Department ("the Department").  It called for applicants with a "Ph.D in Molecular Biology, Biochemistry, Immunology, or related areas with post-doctoral training in Cancer or Cancer-related research areas."  Def.'s Mot., Exhibit 4 (Barnabas EEOC packet, Letter from William Penn) 2.  Barnabas applied for this vacancy, but the University instead filled the position with a thirty-three year-old man.  <u>See</u> Barnabas Depo. at 68:18-70:12; Def.'s Mot., Exhibit 5 (Def.'s Resp. to Pl.'s Doc. Request), at 33.

In May 2005, UDC advertised two full-time Assistant Professor positions in the Department, each listed under vacancy number 04-38.  Def.'s Mot., Exhibit 1 (Def.'s Answers to Pl.'s Interrog. ("Def.'s Answers")), No. 10-11.  The Department hired a forty-five year-old woman to fill the first position in August 2005, and soon withdrew the second position because the department lacked funding to fill it.  Def.'s Mot., Exhibit 1 (Def.'s Supp. Answers to Pl.'s Interrog.), No. 11.  Barnabas submitted an application for this position in February 2006, but the

second vacancy had already been withdrawn.  See id.

UDC officials announced another full-time Assistant Professor position in the Department in November 2005, listed under vacancy number 05-74.  Def.'s Answers at No. 10. Barnabas did not formally apply for this position, Barnabas Depo. at 85:1-17, and the department filled the spot with a forty-nine year-old woman in August 2006.  See Def.'s Answers at No. 10; Def.'s Mot., Exhibit 5 (Def.'s Resp. to Pl.'s Doc. Request), 33.

Between 1997 and 2006, Barnabas taught no fewer than two courses per semester as an adjunct professor.  See Def.'s Mot., Exhibit 3 (Pl.'s Answers to Def.'s Interrog. ("Pl.'s Answers")), No. 5.  In the fall semester of 2006, however, the University offered Barnabas only one course to teach.  See Barnabas Depo. at 95:17-20.  And in the spring semester of 2007 Barnabas was also offered only one course.  Id. at 96:18-97:2.  Barnabas could not teach this class, however, because of health concerns with commuting in icy weather and the demands of caring for her sister.  See id. at 97:3-99:12.  Barnabas has not taught since then because of health problems. See id. at 104:10-05:5; 107:16-17.

In January 2006, Barnabas filed a complaint with the EEOC.  In her complaint, she alleged that UDC engaged in age discrimination when it failed to select her for the 2004 vacancy. See Def.'s Mot., Exhibit 4 (Barnabas EEOC Packet, Complaint).  Barnabas amended her EEOC charge in November 2006 to list an additional claim of age discrimination, and to allege that UDC reduced her workload and compensation in the fall semester of 2006 in retaliation for her filing an EEOC complaint.  Id. (Barnabas EEOC Packet, Am. Complaint).  After the EEOC declined to prosecute her case, Barnabas brought suit in this court, alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.  UDC has now moved for

summary judgment on all of Barnabas's claims.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(2); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## DISCUSSION

## I.    McDonnell Douglas Framework

The Court considers Barnabas's claims for discrimination and retaliation under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying McDonnell Douglas to ADEA claims). Under this framework, a plaintiff must first establish a prima facie case of discrimination or retaliation by a preponderance of the evidence. Id. To show a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)). A prima facie case of retaliation, similarly, requires a plaintiff to establish "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory or -retaliatory explanation for its actions. See Smith v. Dist. of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005). In asserting a legitimate, non-discriminatory or -retaliatory explanation, an employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981) (citation omitted).

If a defendant offers a legitimate, non-discriminatory or -retaliatory reason for its actions, "the district court need not -- and should not -- decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490,

494 (D.C. Cir. 2008).  Rather, the sole inquiry becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008).  In other words, the McDonnell Douglas burden-shifting framework essentially disappears and the only remaining issue is whether the employer discriminated or retaliated against the employee.  See Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying this approach to ADEA claims).  In evaluating whether the plaintiff may overcome summary judgment, "the court reviews each of the three relevant categories of evidence -- prima facie, pretext, and any other -- to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation."  Id. at 679 (quoting Waterhouse v. Dist. of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002)).

## II.   Age Discrimination Claims

Barnabas alleges that UDC discriminated against her by failing to select her for any of three full-time positions.[1]  The Court takes each in turn.

### A.   2004 Vacancy[2]

Barnabas alleges that UDC discriminated against her when it filled the full-time position she applied for in 2004 with a much younger individual.  UDC responds that this claim should be dismissed because Barnabas failed to file a timely complaint with the EEOC.  See Pl.'s Mot. at

---

[1] Barnabas also suggests that UDC discriminated against her by failing to hire her for other full-time positions.  See Pl.'s Opp'n at 4.  She has offered no evidence or argument as to those other allegedly discriminatory acts, however.

[2] The record does not identify the vacancy number for this position.

14-15.

"An individual who wishes to challenge an employment practice under the ADEA must first file a charge with the EEOC." Faison v. Dist. Columbia, 2009 WL 3300484, at *3 (D.D.C. 2009); see 29 U.S.C. § 626(d)(1). "In the District of Columbia, where there is a local anti-discrimination agency, this charge must be filed within 300 days of the occurrence of the allegedly unlawful practice." Faison, 2009 WL 3300484, at *3.

Barnabas concedes that she failed to adhere to these statutory requirements for her allegation concerning the 2004 vacancy: her EEOC complaint was filed well over 300 days after she was denied the position. See Def.'s Opp'n at 4. Instead, she contends that the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009), revives her claim. The Lilly Ledbetter Act, as incorporated into the ADEA, states that "an unlawful practice occurs, with respect to discrimination in compensation in violation of [the ADEA], when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice." 29 U.S.C. § 626(d)(3). According to Barnabas, the University's decision not to grant her the 2004 position was a "discriminatory compensation decision or other practice" that still affected her salary at the time she filed her 2006 EEOC complaint. See Def.'s Opp'n at 4-5. Thus, she argues, her EEOC charge was timely filed.

Barnabas's argument is foreclosed by the D.C. Circuit's recent decision in Schuler v. PricewaterhouseCoopers, LLP, --- F.3d ----, 2010 WL 522345 (D.C. Cir. 2010). In that case, the plaintiff argued that his employer's failure to promote him was a discriminatory compensation

decision or other practice under the Lilly Ledbetter Act.  According to him, because his salary still suffered from the continued effects of his employer's failure to promote him, the Act rendered timely his otherwise late-filed discrimination claims.  The D.C. Circuit rejected this contention, holding that "the decision whether to promote an employee to a higher paying position is not a 'compensation decision or other practice' within the meaning of that phrase in the" Lilly Ledbetter Act.  Id. at *5.  The Lilly Ledbetter Act therefore "d[id] not revive [plaintiff's] claims under the ADEA."  Id.

Hence, UDC's failure to promote Barnabas to a full-time professor position was not a discriminatory compensation decision or other practice.  The Lilly Ledbetter Act does not revive Barnabas's late-filed allegations concerning the 2004 vacancy, and she has thus failed to timely exhaust her administrative remedies with respect to this allegation.[3]

B.    Vacancy 04-38

Barnabas next alleges that UDC unlawfully failed to hire her as an Assistant Professor for vacancy number 04-38.  UDC offers a legitimate, non-discriminatory explanation for its decision: Barnabas did not formally apply for this vacancy until February 2006, months after the University had already filled the position.  See Def.'s Answers at No. 11.[4]  Therefore, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of [discrimination] 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of

---

[3] In light of this conclusion that Barnabas's claims were not timely filed with the EEOC, the Court need not address UDC's argument that Barnabas was not qualified for the position.

[4] UDC initially sought to hire two professors for this vacancy, but ultimately withdrew the funding for the second position.  Id.  Barnabas does not contend that UDC's decision not to hire a second professor for this vacancy was discriminatory.

credence.'"  Jones, 557 F.3d at 678 (quoting United States Postal Serv. Bd. of Governors v.

Aikens, 460 U.S. 711, 716 (1983)) (second alteration in original).

　　　Barnabas concedes that she did not formally apply for the 04-38 vacancy until months

after UDC filled the position.  She argues, however, that when this position was posted she had

"multiple outstanding applications pending with [UDC] for any regular full time professorial

vacancy."  Pl.'s Opp'n at 3.  She points to eleven letters she wrote to various UDC officials

between 2000 and 2003.  See id., Exhibit 2.  In these letters, Barnabas expressed her strong

desire to be reappointed to a full-time position, and requested that she be awarded specific

teaching vacancies.  See id.

　　　These letters -- written before vacancy number 04-38 was posted -- may indicate that

Barnabas wished to be appointed to any available full-time position.  But nothing in the record

discredits UDC's claim that it did not consider Barnabas for the vacancy because she never

formally applied for it.  See Brady, 520 F.3d at 496; Fischbach v. Dist. of Columbia Dep't of

Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the employer has articulated a

non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of

the reasons offered but whether the employer honestly believes in the reasons it offers." (internal

quotation marks and alterations omitted)).  There is no evidence that the University typically

considers "standing applications" for employment, or that UDC told Barnabas that she need not

submit an application in order to be considered for any available professor vacancies.  Indeed,

UDC's evidence -- irrefuted on this point -- indicates that only individuals who formally applied

were considered for this position.  See Def.'s Answers at No. 11 ("The Plaintiff's resume and

application had not been received by the Office of Human Resources and therefore was not

submitted for the first screening."); id. at No. 14 ("The Plaintiff was ineligible to be considered at the time of [the] appointment because she had not submitted her application for consideration at that time.").  Thus, nothing suggests that the University's explanation for its decision not to hire Barnabas is false.

Moreover, Barnabas has failed to identify evidence to support her allegations of discriminatory intent.  She has not argued, for example, that she was more qualified than the individual hired for this vacancy -- herself forty-five years-old.  Nor has she suggested that UDC only interviewed young applicants for the position.  Indeed, at her deposition Barnabas denied having "any interactions with anyone at UDC that made [her] feel that [she was] being discriminated against based on [her] age."  Barnabas Depo. at 115:8-22.  Thus, Barnabas's charge of discrimination rests only on the fact that UDC hired a younger individual to fill the position. Without more, this is not enough to survive summary judgment.  See Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 767 (D.C. Cir. 2002) ("[Defendants'] decision to replace [plaintiff] with a younger woman is insufficient for a jury to conclude that she 'lost out because of [her] age . . . .'  [Plaintiff] proffered no other evidence that she was terminated because of her age . . . ." (citations omitted) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)). [5]

C.      Vacancy 05-74

Finally, Barnabas suggests that UDC unlawfully failed to hire her as an Assistant Professor for vacancy number 05-74.  UDC offers a legitimate, non-discriminatory explanation

---

[5] Because it concludes that Barnabas has not shown any evidence of discrimination, the Court need not address UDC's argument, made for the first time in its reply brief, that Barnabas failed to timely exhaust her administrative remedies with respect to this vacancy.  See Pl.'s Reply in Supp. of its Mot. [Docket Entry 38] ("Pl.'s Reply") at 3.

for this decision as well: Barnabas never applied for the position.  See Barnabas Depo. at 85:1-17.[6]  Accordingly, the Court turns to the "only question" remaining: "whether the employee's evidence creates a material dispute on the ultimate issue of [discrimination]."  Jones, 557 F.3d at 678.

As with vacancy number 04-38, Barnabas's argument rests on the assumption that she had a standing employment application pending when this position was listed.  But once again, the record lacks any evidence from which a reasonable jury could conclude that UDC discriminated against Barnabas by not awarding her this position.  There is no evidence that the University did not honestly and reasonably believe that it was Barnabas's failure to apply for this job that removed her from consideration.  See Fischbach 86 F.3d at 1183.  And there is nothing -- save only for the fact that a younger individual was hired -- to suggest that discrimination motivated the University's decision.  Without more, Barnabas's claim cannot survive summary judgment. See Dunaway, 310 F.3d at 767.

In sum, no reasonable jury could conclude that UDC intentionally discriminated against Barnabas on the basis of her age.  The Court will thus grant UDC summary judgment as to all of Barnabas's allegations of age discrimination.[7]

## III.   Retaliation Claim

Barnabas has also alleged that UDC retaliated against her by reducing her teaching load

---

[6] In its reply brief, UDC states that Barnabas did in fact apply for vacancy number 05-74. See Pl.'s Reply at 4 n.2.  This appears to be in error, as Barnabas herself concedes that she did not apply for the position.  See Barnabas Depo. at 85:1-17.

[7] Barnabas's complaint alleges that UDC's "policy and practice in defining and in filling regular full time professor vacancies in its Department of Biological and Environmental Sciences is based upon age."  Amend. Compl. ¶ 16.  There is nothing in the record to support this allegation, and in any event Barnabas appears to have abandoned it.

for the fall semester of 2006 after she filed a discrimination complaint with the EEOC in January

2006.  See Second Am. Compl. ¶ 19.  UDC offers a legitimate, non-retaliatory explanation for its

decision to reduce her teaching load -- namely, that Barnabas's "schedule was not reduced until

she reported that she was unable to work because of medical problems."  Def.'s Answers to Pl.'s

Interrog. at No. 15.[8]  Thus, the question once again becomes "whether the employee's evidence

creates a material dispute on the ultimate issue of retaliation."  Jones, 557 F.3d at 678.  In

analyzing this issue, the Court considers "each of the three relevant categories of evidence --

prima facie, pretext, and any other -- to determine whether they 'either separately or in

combination' provide sufficient evidence for a reasonable jury to infer retaliation."  Id. at 679

(quoting Waterhouse, 298 F.3d at 996).

     Here, Barnabas has provided evidence that UDC's explanation for its decision to reduce

her schedule is false.  UDC contends that Barnabas's schedule was only reduced after she claimed

to the University that she could not work.  But UDC does not identify any instance where

Barnabas "reported that she was unable to work because of medical problems" before the fall

2006 semester.  And Barnabas stated at her deposition that it was in January 2007 -- months after

her teaching load was reduced -- that she first informed her department chair that she would have

trouble commuting in the icy weather conditions, in part due to health concerns.  Barnabas Depo.

at 97:3-99:9.  Taken in the light most favorable to Barnabas, then, the evidence directly

---

[8] UDC also asserts in its motion for summary judgment that Barnabas's reduced teaching load was "a function of the University's limited need for her to teach during that time period." Def.'s Mot. at 23.  This explanation, offered without citation, cannot supply an additional non-retaliatory explanation, as the record lacks any evidence of the University's teaching needs.  See Burdine, 450 U.S. at 255 n.9 ("An articulation not admitted into evidence will not suffice.  Thus, the defendant cannot meet its burden [to provide a legitimate, non-retaliatory explanation] merely through an answer to the complaint or by argument of counsel.").

contradicts UDC's non-retaliatory explanation for its reduction of Barnabas's schedule, and a reasonable jury could infer that the University's explanation is mere pretext.

Evidence that UDC's non-retaliatory explanation for its actions is mere pretext may itself allow Barnabas to overcome summary judgment.  See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147 (2000) (trier of fact may "infer the ultimate fact of [retaliation] from the falsity of the employer's explanation"); Jones, 557 F.3d at 679 ("[T]hough evidence of pretext is not per se sufficient to permit an inference of [retaliation], it [u]sually . . . will be enough to get a plaintiff's claim to a jury." (internal quotation marks and citations omitted)).  Here, though, there is further evidence of a temporal proximity between Barnabas's filing of an EEOC complaint and the University's decision to reduce her teaching load.

Barnabas filed her EEOC complaint in late January 2006, and the University reduced her teaching load in August of that year.[9]  Generally, an approximately seven-month delay between protected activity and an adverse employment action does not suggest any causal connection between the two.  See Buggs v. Powell, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (seven-month gap "is not, by itself, sufficient to establish an inference of discrimination").  But "[e]specially where a defendant retaliates at the first opportunity that is presented, a plaintiff will not be foreclosed from making out a prima facie case despite a substantial gap in time." Pardo-Kronemann v. Jackson, 541 F. Supp. 2d 210, 218 (D.D.C. 2008).  Here, the University has not disputed Barnabas's assertion that fall 2006 was the first opportunity for it to reduce her teaching load following her protected activity.  And this reduction in Barnabas's schedule is

---

[9] The record is silent as to when UDC decided to reduce Barnabas's teaching load. Accordingly, the Court assumes that August 2006 -- the start of the fall semester, see Barnabas Depo. 103:8-9 -- is the relevant date for this inquiry.

conspicuous: she had taught at least two courses in every semester from 1997 until fall 2006.

See Pl.'s Answers at No. 5.[10]  A reasonable jury could infer that this sudden change in a

previously-consistent schedule, issued at the first opportunity the University had to reduce

Barnabas's teaching load after she filed an EEOC complaint, was the result of retaliation.[11]

Because Barnabas has provided evidence that UDC's non-retaliatory explanation for its

decision to reduce her schedule was false, and because a temporal proximity exists between

Barnabas's protected activity and the University's adverse employment action, a reasonable jury

could find that the University reduced Barnabas's teaching load in retaliation for her filing an

EEOC complaint.  Accordingly, the Court will deny summary judgment on Barnabas's fall 2006

---

[10] UDC claims that there is no evidence that individuals with control over Barnabas's schedule were even aware of her protected activity.  See Def.'s Mot. at 22; see also Jones, 557 F.3d at 679 ("We agree that Jones's supervisors could not have retaliated against him unless they had knowledge of his protected activity.").  But to survive summary judgment, a plaintiff "needn't provide direct evidence that his supervisors knew of his protected activity; he need only offer circumstantial evidence that could reasonably support an inference that they did."  Jones, 557 F.3d at 679.  Here, UDC has offered no evidence that her supervisors did not know of plaintiff's protected activity.  And the fact that Barnabas's schedule was uncharacteristically reduced following her protected activity -- evidence that supports an inference of retaliatory motive -- "necessarily can support an inference of mere knowledge."  See id.

[11] In a response to one of UDC's interrogatories, Barnabas states that "[Department Chair Dr. Freddie] Dixon's relationship with Barnabas changed from supportive to hostile . . . in particular after Barnabas raised, through her attorney, claims of age discrimination in 2005, and filed EEOC charges in January 2006.  Dixon then avoided direct communication with Barnabas and channeled communications with Barnabas through Dixon's secretary."  Pl.'s Answers at No. 3.  In her deposition taken less than a week later, however, Barnabas stated that these changes in her relationship with Dixon took place in 2002.  See Barnabas Depo. at 111:19-14:13.  And Barnabas further clarified that Dixon never told her that all communications with her needed to go through Dixon's secretary.  Barnabas Depo. at 113:14-17.  In light of these contradictions, which the parties do not address, in resolving this motion the Court has not considered Barnabas's suggestion in her interrogatory response that Dixon's attitude towards her changed after she filed her EEOC complaint.

retaliation claim.[12]

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part UDC's motion for

summary judgment.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
John D. Bates
United States District Judge

Dated: <u>March 1, 2010</u>

---

[12] The Court will also deny summary judgment on Barnabas's claim that UDC retaliated against her by assigning her only one course in spring 2007.  <u>See</u> Pl.'s Opp'n at 7.  UDC contends that Barnabas failed to bring this allegation before the EEOC, <u>see</u> Def.'s Mot. at 14, 23, but this alleged retaliation is merely a continuation of the alleged unlawful behavior Barnabas identified in her amended EEOC complaint.  Given the Court's conclusion that the University's reduction of Barnabas's courseload in fall 2006 may have been retaliatory, it cannot conclude as a matter of law that the continued reduction in her courseload the following semester was not also unlawful. The Court does, however, grant summary judgment as to any claim that the University retaliated against Barnabas by not awarding her any courses to teach in summer 2007.  <u>See</u> Amend. Compl. ¶ 12.  Barnabas concedes that in summer 2007 "her disabilities developed so as to prevent her from seeking or accepting any further work."  Pl.'s Opp'n at 7; <u>see also</u> Barnabas Depo. at 104:10-105:5.